UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

RICHARD LUPARDUS,

      Plaintiff,

v.                                    Civil Action No. 2:19-cv-00529

ELK ENERGY SERVICES, LLC,

      Defendant.

MEMORANDUM OPINION AND ORDER

      Pending is the plaintiff's motion for conditional certification of the above-styled action as a collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., filed February 4, 2020.

I.   Background

      The defendant, Elk Energy Services, LLC ("Elk Energy"), provides pipeline inspection services, environmental compliance management, and project staffing, among other services, in the construction and inspection industry. ECF No. 1 ("Compl.") ¶¶ 14-15. Elk Energy employs a variety of inspectors, such as utility inspectors, trenching inspectors, coating inspectors, welding inspectors, environmental inspectors, and testing inspectors. Id. ¶ 24. Inspectors are

not guaranteed a set number of days to work each week or a set
weekly payment.  See id. ¶¶ 31-32.  The inspectors commonly work
more than 12 hours each day for five to six days each week,
totaling over 40 hours each week.  See id. ¶¶ 26-27.  Elk Energy
does not pay inspectors a salary but instead pays inspectors a
flat day rate regardless of the number of hours worked.  See id.
¶¶ 28, 33.  Elk Energy allegedly does not pay its inspectors
overtime.  See id. ¶ 28.

        The plaintiff alleges that all inspectors have the
same basic job duties.  Id. ¶ 25.  Inspectors do not supervise
other employees, do not have the authority to hire or fire other
employees, and do not manage "a customarily recognized
department" of Elk Energy.  See id. ¶¶ 39-40.  Inspectors are
not "office" employees and their work does not relate to the
management of the company's operations.  See id. ¶ 41.  The
primary duty of an inspector does not require independent
judgment or discretion.  See id. ¶ 43.  Instead, inspectors
perform extensive physical labor as "field" employees in
accordance with detailed step-by-step procedures promulgated by
Elk Energy or Elk Energy's customers.  See id. ¶¶ 41-43.

        The plaintiff, Richard Lupardus, worked for Elk Energy
as a pipeline inspector from approximately 2010 until
approximately August 2018.  Id. ¶ 16.  The plaintiff was

responsible for performing visual and non-destructive testing on pipelines, pipeline coating, and facilities owned and operated by Elk Energy customers. <u>Id.</u> ¶ 19. Elk Energy classified the plaintiff as an "employee" and, like other inspectors, paid him on a day rate basis, not on a salary basis, but did not pay him overtime when he worked in excess of 40 hours in a given week. <u>See id.</u> ¶¶ 18-23, 33-36.

The plaintiff alleges that Elk Energy misclassified him and other inspectors as exempt from overtime pay.[1] <u>See id.</u> ¶¶ 20, 22, 46. As a result of this misclassification, the plaintiff alleges that he and other inspectors were denied overtime pay. <u>See id.</u> ¶ 47. The plaintiff further alleges that inspectors complained to Elk Energy about the lack of overtime pay and that Elk Energy either knew or showed reckless disregard for whether the plaintiff and other inspectors were entitled to overtime pay. <u>See id.</u> ¶¶ 48-49.

The plaintiff filed this suit on July 18, 2019, alleging a violation of the FLSA, 29 U.S.C. § 207, for failure to pay the plaintiff overtime pay of time-and-a-half for all

---

[1] The plaintiff alleges that none of the exemptions in the FLSA regulating the duty of employers to pay overtime apply to the plaintiff, the other inspectors, or Elk Energy. <u>See</u> Compl. ¶ 52; <u>see also id.</u> ¶ 38 (citing 29 C.F.R. §§ 541.100, 541.200, 541.300); <u>id.</u> ¶ 44 (citing 29 C.F.R. § 541.203(g)).

hours worked in excess of 40 hours per workweek.  See id. ¶¶ 50-52.  The plaintiff brings suit "[o]n behalf of himself and all other similarly situated employees" as a collective action under the FLSA, 29 U.S.C. § 216(b).  See id. ¶¶ 1-2.  The plaintiff filed a motion for conditional certification on February 4, 2020 to grant conditional certification of the collective action under the FLSA.  See ECF No. 17.  The plaintiff defines the class of employees to be conditionally certified as: "All inspectors employed by Defendant Elk Energy Services, LCC in the last three years."  Id. at 1.  The motion is fully briefed.

## II.  Discussion

### A.  Conditional Certification of the Collective Action

The FLSA requires that employers pay overtime for each hour that employees work in excess of forty (40) hours per week, but the statute exempts "any employee employed in a bona fide executive, administrative, or professional capacity" (i.e., an "exempt" employee).  See 29 U.S.C. § 213(a)(1).  The FLSA permits private plaintiffs to bring collective action suits on behalf of themselves and all other employees who are "similarly situated" for violations of the statute.  Id. § 216(b); see also Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169-170 (1989).  "No employee shall be a party plaintiff to any such

action unless he gives his consent in writing to become such a party and such consent is filed in the court." 29 U.S.C. § 216(b).  The Supreme Court has authorized courts to facilitate notice to potential plaintiffs in such collective actions, emphasizing the importance of "employees receiving accurate and timely notice concerning the pendency of the collective action" and observing that "[c]ourt authorization of notice serves the legitimate goal of avoiding a multiplicity of duplicative suits."  Hoffman-La Roche, 493 U.S. at 170-72.

Many courts have chosen to adopt a two-stage approach to managing collective actions under the FLSA, a practice that originates in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D.N.J. 1987).  The first stage involves conditional certification to give notice to potential class members early in the litigation, before much of the discovery.  At this stage, the court requires only that the plaintiffs "make a 'modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law.'"  Encinas v. J.J. Drywall Corp., 265 F.R.D. 3, 6 (D.D.C. 2010) (quoting Castillo v. P&R Enters., Inc., 517 F. Supp. 2d 440, 445 (D.D.C. 2007)); see also McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 469 (E.D.N.C. 2010) (requiring only "substantial allegations that the putative class members were

together the victims of a single decision, policy, or plan"). That showing "is ordinarily based mostly on the parties' pleadings and affidavits." Chase v. AIMCO Properties, L.P., 374 F. Supp. 2d 196, 200 (D.D.C. 2005)). The claims of the named plaintiff need not be identical to those of potential opt-in plaintiffs; the claims only need to be similar. Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996).

The second stage is usually triggered by a decertification motion by the defendant, after much of the discovery has taken place, in an attempt to show that "the plaintiffs are not, in fact, similarly situated." Encinas, 265 F.R.D. at 6.

Although the Court of Appeals for the Fourth Circuit has not settled on a particular test for conditional certification, courts nationwide generally consider the burden on the named plaintiffs at the first stage to be relatively lenient. See, e.g., Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1219 (11th Cir. 2001), cert. denied 519 U.S. 982 (quoting Grayson, 79 F.3d at 1097) (characterizing the plaintiff's burden at the notice stage as "not heavy" and requiring it to be met by "making substantial allegations of class-wide discrimination"); Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 536 (3d Cir. 2012) (internal quotations omitted)

(affirming the use of the two-step approach and noting that the first-stage "conditional certification" is "not really a certification" but "actually the district court's exercise of [its] discretionary power . . . to facilitate the sending of notice to potential class members"); <u>Mooney v. Aramco Servs. Co.</u>, 54 F.3d 1207, 1214 (5th Cir. 1995), <u>overruled on other grounds by Desert Palace, Inc. v. Costa</u>, 539 U.S. 90 (2003) ("Because the court has minimal evidence, this determination [at the notice stage] is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class.").

> Some courts in this circuit have noted that:
>
> A court's discretion to facilitate notice is not unfettered.  Indeed, courts should not exercise their discretion to facilitate notice unless '[t]he facts and the circumstances of the case illustrate' that a class of 'similarly situated' aggrieved employees exists.

<u>Purdham v. Fairfax Cty. Pub. Sch.</u>, 629 F. Supp. 2d 544, 547-48 (E.D. Va. 2009) (quoting <u>Hoffman-La Roche</u>, 493 U.S. at 170). "The relevant inquiry . . . is not whether the court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion." <u>Camper v. Home Quality Mgmt., Inc.</u>, 200 F.R.D. 516, 519 (D. Md. 2000). "[A] court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated

efficiently because they would require 'substantial individualized determinations for each class member.'"  <u>Syrja v. Westat, Inc.</u>, 756 F. Supp. 2d 682, 686 (D. Md. 2010) (citing <u>Purdham</u>, 629 F. Supp. 2d at 549).

The plaintiff in this action seeks conditional certification of a class of employees defined as: "All inspectors employed by Defendant Elk Energy Services, LLC in the last three years." ECF No. 17 at 1.  The plaintiff alleges that Elk Energy pays all of its inspectors under a single pay system that universally affects all inspectors and fails to compensate them for the amount of overtime required by the FLSA.  <u>See id.</u>; ECF No. 18 at 8-10.  Under this pay system, the plaintiff alleges that he and the other inspectors were not paid a guaranteed salary but were instead paid based on the number of days worked.  <u>See</u> ECF No. 18 at 10-11.  The plaintiff argues that Elk Energy misclassified the group of inspectors as exempt employees "in one fell swoop," and that, consequently, the legal question concerning Elk Energy's liability can be resolved on a class-wide basis.  <u>Id.</u> at 10, 18.

Elk Energy presents three main arguments for denying the motion for conditional certification.

### (1)  *Whether the Plaintiff is Similarly Situated*

First, Elk Energy asserts that the plaintiff has
failed to provide any evidence that he is "similarly situated"
to the putative class.  See ECF No. 19 at 1.  In particular, Elk
Energy alleges that the plaintiff has failed to procure any
consent, affidavit, or declaration from any other employee to
demonstrate that such employee is similarly situated to himself.
See id. at 5.  Elk Energy contends that the plaintiff merely
provides conclusory allegations to support his claim that other
employees are similarly situated.  Id. at 5-6.

Upon review of the plaintiff's complaint and Elk
Energy's own answers to the plaintiff's interrogatories, the
court finds that the plaintiff has made a sufficient showing
that he, and other non-exempt employees working for Elk Energy
as inspectors, were similarly situated as victims of a common
policy or plan not to pay them overtime in accordance with the
FLSA for all or part of the time in which these employees worked
for Elk Energy within the last three years.  See Romero v.
Mountaire Farms, Inc., 796 F. Supp. 2d 700, 705 (E.D.N.C. 2011)
("[T]he standard for conditional certification is fairly lenient
and requires 'nothing more than substantial allegations that the
putative class members were together the victims of a single

decision, policy, or plan.'") (quoting Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102 (10th Cir. 2001)).

In its answers to the plaintiff's interrogatories, Elk Energy states that "[i]nspectors were paid a flat sum for an entire day, regardless the actual number of hours worked," and received overtime for hours in excess of ten hours a day. See ECF No. 17-3 at 15. In 2016, Elk Energy alleges that it changed its compensation system for "inspectors" to pay each inspector "a flat sum for a day's work, regardless the number of hours worked in that day," and paid overtime based on hours in excess of forty hours in a workweek. See id. at 15-16. While Elk Energy alleges that this change in the compensation system began in late 2016 and carried over into 2017, it does not specify whether the compensation system continued after 2017. See id.

Elk Energy classified the plaintiff as an "employee," as defined under the FLSA, and paid him a day rate like other inspectors, even when he was a chief inspector. See ECF No. 17-6 at 3-6. Elk Energy contends that "Plaintiff was compensated on a salary basis because he regularly received each pay period a predetermined amount constituting all or part of his compensation." ECF No. 17-3 at 18. However, Elk Energy's answers to the plaintiff's interrogatories indicate that the plaintiff was not paid on a salary basis but was instead

responsible for tracking his own hours worked to submit for review and approval.  Id. at 14.  As a chief inspector, the plaintiff was guaranteed five days of work per work, should he desire to work, and full compensation for a workday, even if he only worked for part of a day.  See id. at 14, 19-20.  The pay was still "based on a day-rate compensation system . . . calculated by taking the number of days worked and multiplying that figure by the day-rate figure."  Id. at 14.  Overtime pay was based on "all hours worked over ten in a day," rather than the hours worked in excess of forty in a given week.  See id. The overtime calculation changed in 2018 to compensate based on hours worked in excess of forty during a workweek, with overall compensation still based on a day rate.  See id. at 14-15, 20.

Elk Energy's answers demonstrate that the plaintiff and other inspectors were subject to a common policy in which their pay was based on a day rate and in which overtime was not paid in accordance with the FLSA for some period of time.  Other courts have found that groups of inspectors subject to a similar policy were also similarly situated.  See, e.g., Fenley v. Wood Grp. Mustang, Inc., 170 F. Supp. 3d 1063, 1072 (S.D. Ohio 2016) (conditionally certifying a nationwide class of day rate paid inspectors); Wischnewsky v. Coastal Gulf & Int'l, Inc., No. CIV.A. 12-2277, 2013 WL 1867119, at *5 (E.D. La. May 2, 2013)

(finding that the plaintiffs "have alleged facts sufficient to demonstrate that they and other employees who primarily performed field inspections to certify oil, gas, and chemical products were victims of a common policy or plan that violated the law and therefore state a collective action claim under 29 U.S.C. § 216(b)").

### (2)   *Whether the Proposed Class is "Over Broad"*

Second, Elk Energy argues that the plaintiff's proposed class is "over broad" and that the plaintiff's claims are not suitable for collective treatment because of the individualized nature of the claims. See ECF No. 19 at 1, 4, 6. Elk Energy alleges that the plaintiff seeks to create a "nearly-nationwide class" of employees in thirteen different inspector positions working pursuant to contracts with customers across eight to twelve different states based solely on the common job title of "inspector" and the unsupported, conclusory allegation that this group has the same job duties. See id. at 4, 8. Elk Energy alleges that the job duties of each individual inspector are shaped by the terms of Elk Energy's service contracts with its customers. Id. at 8. Elk Energy further alleges that some of these contracts require employees to arbitrate claims, including claims for non-payment of overtime, and to waive the

right to participate in class actions.  See id.; see also ECF
No. 19-1 (arbitration agreement).

Elk Energy alleges that the plaintiff spent a
"significant portion of his relevant (i.e., within the statute
of limitations) time" employed as a "Chief Inspector" with
management responsibilities.  ECF No. 19 at 8; see also ECF No.
17-3 at 5-6 (identifying the plaintiff as a "Chief Inspector"
from 2016-2018).  Elk Energy adds that, in 2017, the plaintiff
performed chief inspector duties on a project but was
compensated at a general inspector rate of pay.  ECF No. 17-3 at
5.  Elk Energy contends that it, in "good faith," considered the
plaintiff to be an exempt employee pursuant to the FLSA's
executive exemption for part of the time at issue in this action
because the plaintiff was classified as a chief inspector in
which his primary duty was "management of a customarily
recognized department or subdivision of Elk Energy."  See id. at
9, 18.  If the court were to proceed with conditional
certification, Elk Energy urges the court to narrow the class to
the only positions held by the plaintiff: chief inspector and
environmental services inspector.  Id. at 10.

In addressing the manageability of individualized
claims of potential opt-in plaintiffs, some courts have opted to
defer manageability concerns until the second stage of

collective action certification.  See, e.g., Vondriska v. Premier Mortg. Funding., Inc., 564 F. Supp. 2d 1330, 1336 (M.D. Fla. 2007) (asserting that "concerns regarding the manageability of the proposed class and whether the interests of judicial economy will actually be served by a collective action . . . are more appropriately addressed at the decertification stage when additional information is available regarding the characteristics of the class"); Gieseke v. First Horizon Home Loan Corp., 408 F. Supp. 2d 1164, 1168 (D. Kan. 2006) (deferring manageability issues to the decertification stage).  Other courts, however, have "exercised their discretion and have taken the manageability of a proposed class into account at the notification stage." Syrja, 756 F. Supp. 2d at 689; see, e.g., Purdham, 629 F. Supp. 2d at 552 (concluding that "conditional certification [was] not appropriate based on the probable necessity of individualized FLSA determinations for each putative class member").

Indeed, the court will need to evaluate the amount of damages for each plaintiff, but "it is not clear without additional discovery that these issues would weigh against certification, given that '[i]ndividual circumstances are inevitably present in a collective action.'" Randolph v. PowerComm Constr., Inc., 7 F. Supp. 3d 561, 576-77 (D. Md. 2014)

(quoting Butler v. DirectSAT USA , LLC, 876 F. Supp. 2d 560, 570
(D. Md. 2012)).  Even if different inspectors performed
different job duties based on their job title and a particular
contract with an Elk Energy customer, the compensation plan was
the same across all inspector positions, including chief
inspectors.  The court therefore defers the evaluation of the
individualized claims of opt-in plaintiffs until the
decertification stage when more information is available to
assess such claims.

>        (3)   *Whether Similarly Situated Individuals Want to
>              Join the Collective Action*

        Third, Elk Energy asserts that conditional
certification is not appropriate unless the plaintiff proves
that similarly situated individuals want to join the lawsuit,
which the plaintiff allegedly has not done.  See ECF No. 19 at
11.  Elk Energy's argument is without merit.  This court has not
required such a showing when granting conditional certification.
See, e.g., Deskins v. S. W. Virginia Cmty. & Tech. Coll., No.
2:18-cv-01109, 2019 WL 3987759, at *4-5 (S.D.W. Va. Aug. 22,
2019); Mayhew v. Loved Ones in Home Care, LLC, No. 2:17-cv-
03844, 2017 WL 5983153, at *3 (S.D.W. Va. Dec. 1, 2017).
Requiring the plaintiff to prove that similarly situated
individuals want to join the lawsuit at this stage creates an

unnecessary burden that essentially requires the plaintiff to initiate an informal notice process prior to moving for conditional certification.  Such a process may mislead or confuse potential opt-in plaintiffs and waste the named plaintiff's time and resources.  The Supreme Court has even noted that the benefits of a collective action "depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate."  Hoffmann-La Roche, 493 U.S. at 170.  The purpose of conditional certification and an official notice is merely to provide the opportunity for putative class members to join the collective action, whether or not they decide to join.

Accordingly, the court finds sufficient cause to grant conditional certification and to proceed with notice to other potential opt-in plaintiffs.

B.    Scope of the Notice

Elk Energy objects to the time period of the putative class and to the text of the plaintiff's proposed notice.

*(1)  Time Period*

The length of the statute of limitations for causes of action under the FLSA depends upon whether the violation at issue was willful.  See 29 U.S.C. § 255(a); Calderon v. GEICO Gen. Ins. Co., 809 F.3d 111, 130 (4th Cir. 2015).  The statute of limitations is two years for non-willful violations, or three years for willful violations.[2]  See 29 U.S.C. § 255(a); Desmond v. PNGI Charles Town Gaming, LLC, 630 F.3d 351, 357 (4th Cir. 2011).  To establish willfulness, the employee bears the burden of showing that "the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute."  Perez v. Mountaire Farms, Inc., 650 F.3d 350, 375 (4th Cir. 2011) (citing McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988)).  Negligence is not sufficient to establish willfulness.  Richland Shoe, 486 U.S. at 135.  The question of whether an employer acted willfully in violation of the FLSA is generally a question of fact.  See Martin v. Deiriggi, 985 F.2d 129, 136 (4th Cir. 1993).

Claims for potential plaintiffs to an FLSA collective action, who are not named in the original complaint, commence "on the subsequent date on which [the potential plaintiffs']

---

[2] The FLSA action must commence within two or three years after the cause of action accrued, or else the action is time-barred. See 29 U.S.C. § 255(a).

written consent is filed in the court." 29 U.S.C. § 256(b); <u>Lee</u>
<u>v. Vance Exec. Prot., Inc.</u>, 7 F. App'x 160, 167 (4th Cir. 2001).
The consent forms of such potential plaintiffs do not relate
back to the date that the complaint was filed. <u>Lee</u>, 7 F. App'x
at 167. This means that the statute of limitations for the
claims of a plaintiff who opts in to join an FLSA collective
action runs back from when that plaintiff files a consent form
with the district court. <u>Id.</u> at 168.

The plaintiff seeks conditional certification for a
class of inspectors employed by Elk Energy within the last three
years. The plaintiff alleges that Elk Energy willfully violated
the overtime provision of the FLSA. <u>See</u> Compl. ¶¶ 48-49; ECF
No. 20 at 8. Elk Energy argues that the scope of the putative
class should be limited to the last two years, in part, because
the plaintiff has not pled facts to support a showing of a
willful violation of the FLSA that would compel a three-year
statute of limitations. <u>See</u> ECF No. 19 at 14-15.

Defining the scope of the putative class to inspectors
employed within the last three years is reasonable and in the
interest of judicial economy. Limiting the scope of the
putative class to the last two years concedes the issue of
willfulness without the benefit of discovery. Willfulness
remains an issue for the finder of fact. If the finder of fact

does not find a willful violation, then any claims in the third year can easily be dismissed. However, if the court were to define a two-year putative class and the finder of fact found a willful violation, it would not be possible to consider claims in the third year and the affected class members would be unduly prejudiced as those claims would likely be time-barred.

### (2)  *Text of the Notice*

District courts play a critical role in ensuring that notices to putative class members are "timely, accurate, and informative." See Hoffman-La Roche, 493 U.S. at 170-72. Elk Energy argues that the plaintiff's proposed notice and consent forms do not meet this standard. See ECF No. 19 at 16.

### (i)  *Award of Costs to a Prevailing Defendant*

First, Elk Energy asserts that the notice must advise potential opt-in plaintiffs that they may be required to share responsibility for Elk Energy's costs if it prevails in the litigation. See ECF No. 19 at 16. The plaintiff argues that the notice should not threaten class members with the remote possibility that they could be liable for Elk Energy's costs. ECF No. 20 at 9. The plaintiff further argues that this effort only serves to chill participation by dissuading potential opt-

in plaintiffs from exercising their rights to join the collective action.  Id. at 9-10.

Section 216(b) of the FLSA provides, in pertinent part, that: "The court in [a collective] action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  Section 216(b) is silent as to the awards of costs to prevailing defendants, but several federal courts of appeal have found that a prevailing defendant may recover costs. See, e.g., Faludi v. U.S. Shale Sols., L.L.C., 950 F.3d 269, 276 (5th Cir. 2020) (holding that "the FLSA does not preclude an award of costs to a prevailing defendant" and that a court must articulate "some good reason" for denying or reducing a prevailing party's request for costs); Lochridge v. Lindsey Mgmt. Co., 824 F.3d 780, 782 (8th Cir. 2016) (holding that "neither § 216(b) nor any other provision of the FLSA precludes an award of costs to a prevailing defendant"); Frye v. Baptist Mem'l Hosp., Inc., 507 F. App'x 506, 508 (6th Cir. 2012) (holding that "a prevailing defendant can recover costs under the FLSA").

Despite the possibility that Elk Energy may prevail in this action and be entitled to recover some or all of its costs, the court agrees that language in the notice advising potential

opt-in plaintiffs of the risk of paying litigation costs presents a chilling effect that subverts and is antithetical to the remedial purpose of the collective action.  "[T]he threat of payment of defense costs . . . if [Elk Energy] prevails is out of proportion to the risk and including such a warning could have a chilling effect on participation in the collective action."  Hussein v. Capital Bldg. Servs. Grp., Inc., 152 F. Supp. 3d 1182, 1196-97 (D. Minn. 2015).  Other federal district courts have rejected such language for similar reasons.  See, e.g., Frazier v. PJ Iowa, L.C., 337 F. Supp. 3d 848, 875 (S.D. Iowa 2018); Littlefield v. Dealer Warranty Servs., LLC, 679 F. Supp. 2d 1014, 1019 (E.D. Mo. 2010).  Potential opt-in plaintiffs should have full knowledge of the risks in order to make an informed decision of whether to join the collective action.  Such risks are better discussed with an attorney who can properly evaluate that person's potential claims and advise that person of the benefits and risks of joining the action.

### (ii) Court Neutrality

Second, Elk Energy argues that the proposed notice should advise recipients of the court's neutrality.  See ECF No. 19 at 17.  In notice procedures for collective actions, "trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action."  Hoffman-La Roche, 493

21

U.S. at 174.  The plaintiff's proposed notice states that the court has "not yet decided whether [Elk Energy] has done anything wrong," ECF No. 17-10 at 2, but Elk Energy argues that the notice should contain a statement in bold font that reads as follows: "THE COURT HAS TAKEN NO POSITION ABOUT THE MERITS OF PLAINTIFF'S CLAIMS OR DEFENDANT'S DEFENSES," ECF No. 19 at 17.

The court agrees that any communications to the putative class must clearly and unequivocally state that the court has not taken a position on the merits of this case.  The proposed language by Elk Energy is acceptable should the parties agree to use that language.

### (iii)      *Right to Choose Counsel*

Third, Elk Energy argues that the proposed notice should advise recipients that they have the right to choose their own counsel.  <u>See</u> ECF No. 19 at 18.  The plaintiff does not respond to this argument.

The court agrees that the notice should inform potential opt-in plaintiffs of their option to proceed with plaintiff's counsel or to choose their own counsel.  Opt-in plaintiffs may elect plaintiff's counsel for representation, but they must not be prevented from choosing their representation.

(iv) *Management of Consent Forms*

Fourth, Elk Energy argues that the consent form should be returned to the court rather than to plaintiff's counsel. See ECF No. 19 at 18.  The plaintiff opposes this request for four reasons: (1) such a process is an inefficient use of the court's limited time and resources; (2) the court may be too busy to file consent forms promptly when they are received, which impacts the statute of limitations period for each opt-in plaintiff; (3) the consent forms will contain personal information that does not need to be part of the public record; (4) sending the forms to the court risks plaintiff's counsel not being informed of new opt-in plaintiffs until the ECF notice; and (5) having the court receive consent forms invites the problem of class members contacting the court with questions about the case.  See ECF No. 20 at 14-15.

The court agrees with all of the plaintiff's concerns. In addition to these, court management of the consent forms also jeopardizes the neutral position of the court.  Elk Energy fails to provide any reason why the burden of managing the consent forms should be imposed upon the court.  The court does not assume responsibility for the management of consent forms in this action.  Even with the option to choose plaintiff's counsel or separate counsel for representation, all consent forms should

be submitted to plaintiff's counsel to ensure efficient management of all opt-in plaintiffs.

Accordingly, the court defines the putative class at the notice stage to be all inspectors employed by Elk Energy Services, LLC within the last three years.  Elk Energy will have the opportunity to argue whether the class, in whole or in part, is not similarly situated at the decertification stage should it choose to do so.  Finally, before any notice is sent, Elk Energy should have the opportunity to review the forms and communicate any concerns.  The court shall have final approval of all forms before they are sent.

C.    <u>Method of the Notice</u>

The plaintiff requests that Elk Energy produce a list of all current and former inspectors employed by Elk Energy within the three-year period preceding conditional certification with the following information: names, all known addresses, all phone numbers, all known e-mail addresses, job titles, and dates of employment.  <u>See</u> ECF No. 18 at 25.  The plaintiff requests this information in a computer-readable format, such as a Microsoft Excel spreadsheet.  <u>Id.</u>  The plaintiff initially requested the list within ten days of granting conditional

certification, see id., but he agrees to twenty days per Elk Energy's request, see ECF No. 20 at 19.

The plaintiff proposes that the Notice of Rights and Consent Form be sent to class members in three ways: (1) by first class mail, (2) by electronic mail ("e-mail"), and (3) by text message. ECF No. 18 at 22-25. Sending such notices by first class mail is standard in collective action cases. The plaintiff asserts that e-mail notice is especially appropriate due to the extended period of time that the putative class members spend away from home performing inspection work. See id. at 23. The plaintiff also notes that Elk Energy uses the personal e-mail addresses of its employees to communicate with them. Id. at 24. The plaintiff further asserts that text message is a "viable and efficient means of communicating with many prospective members of [a] collective action." See id. (quoting Landry v. Swire Oilfield Servs., LLC, 252 F. Supp. 3d 1079, 1129 (D.N.M. 2017)). Elk Energy opposes sending notices by text message due to privacy concerns and because "a text message notice could be incomplete and might not convey the seriousness of the communication." ECF No. 19 at 18 (quoting Kiley v. MedFirst Consulting Healthcare Staffing, LLC, 297 F. Supp. 3d 1260 (N.D. Ala. 2018)).

The court approves sending notices in the three proposed methods.  The purpose of sending notices to class members is to ensure that such notices are read and considered by the recipients.  The diversity of these three methods increases the likelihood that each class members will review the notice.  First-class mail may be discarded as junk and e-mails may be inadvertently filtered to junk mail folders, but text messages are less likely to be ignored or overlooked.  Sending the notice electronically by e-mail and text message are especially appropriate for this class who are regularly away from home and conducting work in the field.  The court does not see how privacy concerns in text message notices differ from privacy concerns in mail or e-mail notices.  However, the court agrees that notices by text message may risk being incomplete. The parties therefore must agree on the language for a text message that is not overly burdensome but provides sufficient information to the recipient.  For example, a text message advising putative class members of the collective action and directing them to a website or advising them to check their mail or e-mail may be appropriate should the parties agree on such language.

Plaintiff's counsel accepts responsibility to oversee the notice process and to pay the up-front charges for postage,

copying, and other related expenses.  ECF No. 18 at 25.  The
plaintiff proposes to send the Notice of Rights and Consent Form
to putative class members within ten days of the production of
the list from Elk Energy, and to give putative class members
sixty days from the initial mailing date to return consents to
plaintiff's counsel.  Id.  The plaintiff requests leave to send
a second round of notices in the form of a postcard, e-mail, and
text message.  See id. at 25-26.  This second round would be
sent thirty days after the initial mailing date to those class
members who have not yet opted into the lawsuit.  Id.  Elk
Energy opposes sending reminder notices because such reminders
could be understood as the court encouraging class members to
join the collective action.  ECF No. 19 at 19.

        The court approves this schedule and finds reminder
notices to be reasonable and appropriate for the objective of
ensuring that the notices are read and considered by the
recipients.  Recipients may overlook the initial notifications,
even in three forms, or become sidetracked from filing their
consent form, but a second round helps to ensure that putative
class members receive the notice and are reminded to act should
they wish to do so.  As to the argument that such reminder
notices could be understood as court encouragement, the
substance of all the notices must clearly specify the court's

role to avoid the appearance that the court endorses the action or encourages participation.  As with the text message, the parties must agree on appropriate language for the postcard.

### III. Conclusion

For the foregoing reasons, it is ORDERED that the plaintiff's motion be, and it hereby is, granted.  Furthermore, the court ORDERS that:

1. The class is conditionally certified as consisting of all inspectors employed by Elk Energy Services, LLC within the last three years;

2. By August 17, 2020, Elk Energy shall provide plaintiff's counsel with the following information about all class members in a computer-readable format: names, mailing addresses, phone numbers, e-mail addresses, job titles, and dates of employment;

3.  By August 7, 2020, the plaintiff shall submit to Elk Energy and the court proposed forms of the following: the notice, the consent form, the reminder postcard, the initial e-mail, the reminder e-mail, the initial text message, and the reminder text message;

4.  Elk Energy shall have an opportunity to object to the form of the above-mentioned forms and to negotiate, in good faith, mutually agreeable forms with the plaintiff, which forms shall be submitted by either party to the court for approval by August 27, 2020;

5.  After approval of the proposed forms, the plaintiff shall send the appropriate forms by first-class mail, e-mail, and text message to the class members.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record.

ENTER: July 28, 2020

John T. Copenhaver, Jr.
Senior United States District Judge