```
          UNITED STATES DISTRICT COURT
         SOUTHERN DISTRICT OF WEST VIRGINIA
                  AT CHARLESTON
```

RICHARD LUPARDUS, on Behalf of Himself and
on Behalf of All Others Similarly Situated,

      Plaintiff,

v.                                        Civil Action No. 2:19-cv-00529

ELK ENERGY SERVICES, LLC,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is the plaintiffs' unopposed motion to approve settlement, filed April 27, 2021 (ECF No. 88).

### I. Background

The named plaintiff, Richard Lupardus, filed suit in this court on July 18, 2019, to recover unpaid overtime wages from his former employer, defendant Elk Energy Services, LLC, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., on behalf of himself and others similarly situated. See ECF No. 1. His complaint alleges that he and other employees employed by the defendant as inspectors worked in excess of forty hours per workweek without being compensated on the basis of the applicable overtime rate because the defendant

misclassified them as exempt from the FLSA's overtime pay requirements.  See id.

On July 28, 2020, the court conditionally certified this matter as a collective action pursuant to 29 U.S.C. § 216(b), over the defendant's opposition, with the class "consisting of all inspectors employed by [the defendant] within the last three years."  ECF No. 28 at 29; see ECF No. 17; ECF No. 19.  Thereafter, the court approved the notice documents, which the defendant did not oppose, and the named plaintiff disseminated notices to a list of potential class members identified by the defendant.  See ECF No. 31; ECF No. 32.  An additional 28 opt-in plaintiffs consented to pursue their claims through this collective action and agreed to be represented by the named plaintiff's counsel.  See ECF No. 33; ECF No. 34; ECF No. 35; ECF No. 36; ECF No. 37; ECF No. 82; ECF No. 83; ECF No. 84; ECF No. 85.[1]

The plaintiffs' counsel, who represents all opt-in plaintiffs in this matter, states that payroll, timesheet, and other records produced in discovery revealed that 14 of the opt-in plaintiffs should not maintain FLSA claims against the

---

[1] The named plaintiff filed 29 consents from opt-in plaintiffs, but two of the consents appear to be for the same opt-in plaintiff, Salvador Musso.  See ECF No. 36-4; ECF No. 84-3.

2

defendant in this action.  See ECF No. 89 at 2-3, 17-20.
Specifically, the plaintiffs' counsel states that, unlike the
named plaintiff, whose overtime hours are alleged to have been
impermissibly calculated on a per-day basis, these 14 opt-in
plaintiffs appear to have had overtime calculated on a per-week
basis.  See id. at 17-20.  Because these 14 opt-in plaintiffs do
not assert the same theory of FLSA violation pled by the named
plaintiff, the parties agree that they should be dismissed
without prejudice.  See id. at 2-3, 20.[2]

On February 18, 2021, the parties filed a stipulation
of dismissal, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii),
purporting to dismiss without prejudice the 14 opt-in plaintiffs
described in the preceding paragraph.  See ECF No. 86.  In a
subsequent order, the court noted that it was unclear whether
the stipulated dismissal involved a settlement or compromise of
an FLSA claim, which could not be effective without court
approval, and that the parties' stipulation offered no reason
for the dismissal.  See ECF No. 87 (citing Lynn's Food Stores,

---

[2] The 14 opt-in plaintiff for whom dismissal without prejudice is
sought are Jason Anders, James Barzak, Michael Carper, David
Cottrell, Caitlin Dean, James Fiebelkorn, Zachary Henson,
Freddie Kays, Roberto Moran, Michael Pena, John Ramirez, Clayton
Rossler, John Turner, and Gary Zack.  See ECF No. 86.

3

Inc. v. United States, 679 F.2d 1350, 1352-53 (11th Cir. 1982)).[3] Accordingly, the court vacated the parties' stipulation of dismissal. See id.

After the parties proceeded through nearly 18 months of discovery, see ECF No. 8; ECF No. 81, the plaintiffs filed the current motion to approve settlement, which the defendant does not oppose, along with the parties' settlement agreement, see ECF No. 88; ECF No. 88-1. The parties have agreed to settle for a total sum of $100,000.00. See ECF No. 88 at 3; EFC No. 88-1 at 9. Of this total sum, $3,000.00 is to be paid to the named plaintiff as a service award in recognition of the additional risk and effort he undertook on behalf of the class; $40,650.00 is to be paid to the plaintiffs' counsel for fees, costs, and expenses; and $56,350.00 is to be distributed pro rata among the named plaintiff and the 14 opt-in plaintiffs for whom dismissal without prejudice is not sought (together, the "settlement class") based on their individual calculations of alleged unpaid overtime compensation and liquidated damages, as set forth in the Stipulation and Settlement Agreement filed on

---

[3] At the time the court entered its order vacating the stipulation of dismissal, it had not been apprised of the parties' reasons for seeking dismissal without prejudice that are set forth in the plaintiffs' memorandum in support of the current motion and that are summarized in the preceding paragraph.

April 27, 2021.  See ECF No. 88 at 3-5, 11-12; ECF No. 88-1 at 9-10.  The agreement specifies that half of each of the amounts paid to the fifteen members of the settlement class (except for the $3,000.00 service award to the named plaintiff) represents unpaid overtime wages from which the defendant will take applicable payroll deductions, while the other half of each amount (plus the $3,000.00 service award to the named plaintiff) represents liquidated damages from which the defendant will not take payroll deductions.  See ECF No. 88 at 4-5; ECF No. 88-1 at 10-11.  In exchange for this sum, the settlement class agrees to release their FLSA claims against the defendant.  See EFC No. 88 at 5; ECF No. 88-1 at 12-13.

As for the remaining 14 opt-in plaintiffs, the parties ask that their claims against the defendant be dismissed without prejudice.  See ECF No. 88 at 17-21.

## II. Legal Standard

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  Genesis HealthCare Corp. v. Symczyk, 569 U.S. 66, 69 (2013).  Doing so would thwart the purpose of the FLSA, which is "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions that are detrimental

to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 739 (1981) (brackets omitted) (quoting 42 U.S.C. § 202(a)). Consequently, FLSA claims for back wages can be settled in two ways, only one of which is relevant here: "When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." Lynn's Food Stores, 679 F.2d at 1352-53 (citing Schulte, Inc. v. Gangi, 328 U.S. 108 (1946); Jarrard v. Se. Shipbuilding Corp., 163 F.2d 960, 961 (5th Cir. 1947)).

Because the Fourth Circuit has not yet had occasion to endorse a standard for approving FLSA settlements, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in Lynn's Food Stores." Hackett v. ADF Rest. Invs., 259 F. Supp. 3d 360, 365 (D. Md. 2016) (internal quotation marks omitted). Thus, courts have stated that:

> The settlement must reflect a fair and reasonable resolution of a bona fide dispute over FLSA provisions, which includes a finding with regard to (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from [Fed. R. Civ. P.] 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement.

6

*Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (internal quotation marks and brackets omitted); see also *Lynn's Food Stores*, 679 F.2d at 1355. "These factors are most likely to be satisfied where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect his rights under the statute.'" Id. (brackets omitted) (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

### III. Discussion

A.  Bona Fide Dispute

"In deciding whether a <u>bona fide</u> dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement . . . ." Id.

With respect to the settlement class, the FLSA issues here are actually in dispute. The settlement-class plaintiffs allege that they are non-exempt employees whom the defendant misclassified as exempt and that they are owed unpaid overtime wages and liquidated damages because the defendant calculated their overtime compensation on a per-day basis. See ECF No. 1. The defendant has denied that the plaintiffs are non-exempt

employees, that their overtime compensation was miscalculated, and that they are owed unpaid wages or liquidated damages. See ECF No. 5; see also ECF No. 88-1 at 4 (denying liability). The defendant has also contested the plaintiffs' motion for conditional class certification on the ground that the opt-in plaintiffs are not similarly situated to the named plaintiff for purposes of an FLSA collective action. See EFC No. 19. Although not necessarily reflected in the record, the plaintiff states that the parties also disagreed on damages calculations, the issue of willfulness, and the applicability of the statute of limitations. See ECF No. 89 at 8-9.

With respect to the remaining 14 opt-in plaintiffs, there are no FLSA issues currently in dispute, as all parties agree that discovery revealed insufficient evidence to support their claims for unpaid overtime wages or liquidated damages under the theory asserted in the complaint. See ECF No. 1; ECF No. 89. Therefore, the court agrees with the parties that a dismissal without prejudice of these 14 opt-in plaintiffs is proper pursuant to Fed. R. Civ. P. 41(a).

B.   **Fairness and Reasonableness**

Next, the court turns to the relevant factors from Rule 23's assessment for fairness and reasonableness. Those factors include:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the probability of plaintiffs' success on the merits and (6) the amount of the settlement in relation to the potential recovery.

Kirkpatrick v. Cardinal Innovations Healthcare Sols., 352 F. Supp. 3d 499, 502–03 (M.D.N.C. 2018); accord Patel v. Barot, 15 F. Supp. 3d 648, 656 (E.D. Va. 2014).

Regarding the first and second factors:  The parties have had the opportunity to conduct and complete discovery in this matter.  See ECF No. 81.  In the course of discovery, the defendant produced time and payroll records, which allowed counsel to develop calculations of the settlement-class plaintiffs' allegedly unpaid wages at issue.  See ECF No. 89 at 9.  This discovery reduced uncertainties for both sides sufficiently to facilitate the settlement agreement now before the court.  See id.  By avoiding additional discovery, the parties have conserved resources for settlement that might otherwise have been consumed by litigation.  See Duprey, 30 F.

Supp. 3d at 409.  Beyond discovery, the parties litigated this matter thoroughly, arguing conditional-certification issues and conducting settlement conferences.

As to the remaining factors:  There is no evidence or indication of fraud or collusion.  Neither side has abandoned its litigation position, and the settlement appears to be the result of arms-length negotiation.  Counsel for both parties appear to have extensive experience in wage and hour litigation, and they competently pursued this action.  Although both parties maintain confidence in their respective positions, they agree that they would face uncertainty at both the pre-trial and trial phases of litigation and that the costs of additional litigation are not justified in these circumstances.  <u>See</u> ECF No. 89 at 11.  Further, counsel for both parties agree that, given the uncertainties involved in this case, the settlement amount – which represents approximately 270% of the settlement-class plaintiffs' alleged damages under a two-year limitations period and approximately 50% of their damages under a three-year limitations period – is "fair and reasonable" in relation to the potential recovery.  <u>Id.</u> at 10-11.

Having considered the relevant factors, the court finds that the proposed settlement is fair and reasonable.[4]

C. <u>Attorney's Fees</u>

Under the FLSA, a prevailing plaintiff is entitled to "a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). "In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." <u>See</u> <u>Robinson v. Equifax Info. Servs., LLC</u>, 560 F.3d 235, 243 (4th Cir. 2009); <u>Randolph v. Powercomm Constr., Inc.</u>, 715 F. App'x 227, 230 (4th Cir. 2017) (applying lodestar method to attorney fees request under FLSA). To ascertain a fee's reasonableness in terms of hours expended and the rate charged, the Fourth Circuit has applied

---

[4] As for the $3,000.00 service award to the named plaintiff, such awards have been approved in FLSA collective-action settlements. <u>See</u> <u>Irvine v. Destination Wild Dunes Mgmt., Inc.</u>, 204 F. Supp. 3d 846, 850 (D.S.C. 2016). "To determine whether such a payment is warranted, the [c]ourt must consider the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefited from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation." <u>Id.</u> at 850-51 (internal quotation marks omitted). Here, the named plaintiff's efforts attested by counsel (conferring with counsel, reviewing and approving litigation documents, providing sworn testimony, and more, <u>see</u> ECF No. 89 at 12) are deserving of this reasonable service award.

the following factors:

> (1) The time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

McAfee v. Boczar, 738 F.3d 81, 88 n.5 (4th Cir. 2013) (quoting Johnson v. Ga. Highway Express Inc., 488 F.2d 714, 717–19 (5th Cir. 1974)). Second, "the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Id. at 88 (internal quotation marks omitted). And third, "the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id. (internal quotation marks omitted).

The plaintiffs' counsel calculates the lodestar figure to be $42,967.50 and substantiates this amount with an itemized invoice detailing the 115.55 hours worked by attorneys at a rate of $350.00 per hour and 20.2 hours of work by paralegals at a

rate of $125.00 per hour.  See ECF No. 91.[5]  In light of the factors set forth above — particularly the time and labor counsel expended on the case; counsel's skill, experience, reputation, and ability; counsel's customary fee for similar work; the fee awards in similar cases; and the amount in controversy and results obtained — the court determines that the figure provided by counsel is a reasonable calculation of the lodestar amount.  The court notes in this regard that FLSA collective actions "can be complex and difficult . . . requir[ing] an understanding of a specialized area of the law," such that "a relatively small number of attorneys are available to handle these cases on behalf of [p]laintiffs," Newbanks v. Cellular Sales of Knoxville, Inc., No. 3:12-1420-CMC, 2015 WL 12843763, at *9-10 (D.S.C. Feb. 4, 2015); that the practice of counsel in this action predominately involves representing plaintiffs in FLSA actions, which, as here, almost invariably are pursued on a contingency basis and represent significant opportunity costs; and that, as attested by counsel's affidavit, counsel have substantial experience in this area of law and

---

[5] The plaintiffs' counsel initially estimated the lodestar to be between $42,600.00 and $44,000.00.  See ECF No. 88-2 at 3; ECF No. 89 at 5.  However, the court subsequently ordered the plaintiff's counsel to provide an itemization of the hours expended on the case.  See ECF No. 90.  After providing the itemization, the plaintiff's counsel calculates $42,967.50 as the lodestar amount.  See ECF no. 91.

could command a higher rate in other markets, see ECF No. 88-2.

Next, the court must subtract from the lodestar amount fees for hours spent on unsuccessful claims unrelated to successful ones. See McAfee, 738 F.3d at 88. In an itemization of expenses, the plaintiff's counsel identifies $2,100.00 in fees incurred solely in pursuit of the claims brought by the 14 opt-in plaintiffs for whom dismissal without prejudice is sought. See ECF No. 91.[6] As the plaintiff's counsel suggests, the court will subtract the $2,100.00 amount from the lodestar figure, resulting in an adjusted lodestar amount of $40,867.50.

Lastly, the court should award some percentage of the remaining amount, depending on the degree of the plaintiffs' success, recognizing the "'"strong presumption' that the lodestar number represents a reasonable attorney's fee." See McAfee, 738 F.3d at 88-89 (quoting Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 554 (2010)). Here, pursuant to the settlement agreement, the plaintiff's counsel proposes

---

[6] The plaintiff's counsel also identifies an additional $3,290.00 in fees incurred for tasks involving all 29 of the plaintiffs and states that neither the work done nor the fees associated with it can be segregated between the 15 settlement-class plaintiffs and the 14 plaintiffs for whom dismissal without prejudice is sought. See ECF No. 91. The court agrees with the plaintiff that this amount represents both work on successful claims and work on unsuccessful claims that is related to work on successful claims, and this amount will not be deducted from the lodestar figure.

$40,650.00 in attorney's fees.  The proposed amount represents a slight decrease from the adjusted lodestar figure and does not include an estimated $1,025.99 in costs, which counsel does not seek.  See ECF no. 88-2 at 3.  Although the $40,650.00 fee proposed by the settlement is somewhat high compared to the total $100,000.00 total award, it represents an acceptable portion of the total settlement amount.  See Mayhew v. Loved Ones In Home Care, LLC, No. 2:17-cv-03844, 2020 WL 1492542, at *4 (S.D.W. Va. March 26, 2020) (approving $40,000.00 attorney's fee from a total settlement amount of $100,000.00).  And, a $40,650.00 fee is still less than the lodestar amount and does not include litigation costs incurred by the plaintiff's counsel.  See Dotson v. P.S. Mgmt., Inc., No. 2:17-cv-00896, 2020 WL 8571844, at *6 (S.D.W. Va. Apr. 7, 2020) (approving a 1.97 multiplier of the lodestar figure because it fell well within the mean range of multipliers).  The court concludes that the $40,650.00 figure represents a reasonable percentage of the remaining amount.

Accordingly, the court finds that the award of attorney's fees contemplated by the proposed settlement is reasonable.

## IV. Conclusion

For the foregoing reasons, it is ORDERED that:

1. the plaintiff' unopposed motion to approve settlement (ECF No. 88) be, and hereby it is, granted;

2. the settlement-class plaintiffs – Richard Lupardus, Craig Carte, Steven Clifton, Marshall Johnson, Steven LaBundy, Ryan Lanier, Matthew Lupardus, Clayton McGahey, Luke McGee, William Mitchell, Salvador Musso, Michael Perkins, David Shannon, Kayla Shay, and Tom Weiss – be, and hereby they are, dismissed with prejudice;

3. the remaining plaintiffs – Jason Anders, James Barzak, Michael Carper, David Cottrell, Caitlin Dean, James Fiebelkorn, Zachary Henson, Freddie Kays, Roberto Moran, Michael Pena, John Ramirez, Clayton Rossler, John Turner, and Gary Zack – be, and hereby they are, dismissed without prejudice; and

4. the parties are directed to distribute the settlement sum by payment to those entitled thereto on or before July 26, 2021, and to file a final report that all sums have been so paid and the checks issued therefor

have been cashed, which final report shall be filed on or before August 20, 2021.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and to any unrepresented parties.

ENTER: July 6, 2021

John T. Copenhaver, Jr.
Senior United States District Judge